# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 24-2431

———————————————

Scott A. Kampas; Steven S. Hoffmann

*Plaintiffs - Appellants*

v.

City of St. Louis, Missouri; Georgiann Kegel, personal representative for the estate of Kenneth Kegel, in his individual and official capacities; P.O. Eric Larson, in his individual and official capacities; P.O. Benjamin Neil Hawkins, in his individual and official capacities; P.O. Bryan Lemons, in his individual and official capacities

*Defendants - Appellees*

P.O. Timothy John McNamara, in his individual and official capacities

*Defendant*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: September 17, 2025
Filed: October 31, 2025

————————

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.

————————

SHEPHERD, Circuit Judge.

St. Louis police officers arrested Scott Kampas and Steven Hoffmann (the Plaintiffs) for trespassing on Interstate 64 as part of a mass arrest of protesters. Following this event, the Plaintiffs brought several claims under 42 U.S.C. § 1983 against the City of St. Louis, St. Louis Metropolitan Police Department (SLMPD) Officers Kenneth Kegel,[1] Eric Larson, Benjamin Hawkins, Bryan Lemons, and Timothy McNamara (the Defendants). The district court[2] dismissed the Plaintiffs' claims against Officer McNamara pursuant to Federal Rule of Civil Procedure 12(b)(6) and subsequently granted summary judgment in favor of the remaining officers based on qualified immunity and in favor of the City of St. Louis. The Plaintiffs now appeal the grant of summary judgment to the officers. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In September 2017, a state court in the City of St. Louis acquitted former SLMPD Officer Jason Stockley of the murder of Anthony Lamar Smith. In response to the verdict, protests broke out across St. Louis and continued for several weeks. This case concerns one such protest that occurred on October 3, 2017. That evening, Officer Kegel was notified that a group of protesters were marching on Interstate 64 at Compton Avenue and were heading eastbound. SLMPD had intelligence detectives monitoring the protests, and these detectives informed Kegel that the protesters were blocking traffic—stretching from the far-left lane across the interstate highway to the shoulder area. The protesters walked eastbound until they reached the Jefferson Avenue off-ramp, where they exited the interstate highway.

---

[1]During the pendency of the appeal, Kenneth Kegel died. Georgiann Kegel has been substituted as the personal representative for his estate.

[2]The Honorable Stephen R. Clark, Chief Judge, United States District Court for the Eastern District of Missouri.

The Plaintiffs attended the protest as "legal observers" to document police conduct and collect evidence for future litigation. Unlike the marching protesters, the Plaintiffs did not step foot onto Interstate 64, and no officer saw them on the interstate highway. The Plaintiffs lawfully stood in the grassy area at the base of the Jefferson Avenue off-ramp while the protesters blocked the interstate highway.

Before exiting the interstate highway, the protesters came upon the Plaintiffs at the base of the Jefferson Avenue off-ramp and surrounded them. The protesters lingered there for around a minute, and some of them walked around the grassy area where the Plaintiffs stood. Then, the protesters walked up the off-ramp to Jefferson Avenue; the Plaintiffs lawfully walked up the grassy area next to the off-ramp to Jefferson Avenue. At the top of the off-ramp, the protesters and the Plaintiffs turned left and headed northbound on Jefferson Avenue as a single group. While on Jefferson Avenue, video footage shows that Hoffmann, although at the end of the group, was surrounded by protesters walking in front of, behind, and beside him. Kampas is not seen on video after the group turned onto Jefferson Avenue.[3]

SLMPD Chief O'Toole authorized Kegel to arrest individuals who had trespassed onto Interstate 64. Kegel waited for the protesters to exit the interstate highway before authorizing the Civil Disobedience Team to make arrests. To effectuate the arrests, SLMPD officers encircled the group and physically prevented anyone from leaving or entering the enclosed area. Kegel and Larson supervised the arrests within the encirclement. The Plaintiffs were part of the encircled group, and they told several officers they had not been on the interstate highway and asked to leave. Their requests were denied. No officers told Kegel that individuals within the encircled group claimed they had not been on the interstate highway.

Then, the Plaintiffs, along with several other arrestees, were transported to the St. Louis City Justice Center where officers processed them and completed the field

---

[3]The officers did not have access to this video footage at the time of the mass arrest.

booking forms.  Officer Hawkins filled out the Plaintiffs' forms and listed himself as the arresting officer.  As Hawkins completed the forms, Hoffmann told him that he had not been on the interstate highway, did not attend the protest, and that the officers lacked probable cause to arrest him.  None of the individuals arrested on October 3, 2017 were ultimately charged with a crime.

The Plaintiffs filed suit against the City of St. Louis and SLMPD Officers Kegel, Larson, Hawkins, Lemons, and McNamara under 42 U.S.C. § 1983 for violating their First and Fourth Amendment rights.  Specifically, they allege that the Defendants violated their First Amendment right to freedom of speech, retaliated against them for exercising their First Amendment rights, and unlawfully seized them in violation of the Fourth Amendment.  The Plaintiffs also allege Monell[4] claims under § 1983 against the City of St. Louis for failure to instruct, train, supervise, control, and/or discipline the SLMPD officers.  The Defendants filed a motion to dismiss all the Plaintiffs' claims.  The district court granted the motion in part, dismissing the claims against Officer McNamara because he did not receive timely notice of the lawsuit but denied the motion as to the rest of the defendants.

Subsequently, the district court granted the Defendants' motion for summary judgment.  It found the officers were entitled to qualified immunity regarding the Plaintiffs' unlawful seizure claim as it was not clearly established that the Plaintiffs' arrests violated the Fourth Amendment.  Additionally, the district court found that the officers were entitled to qualified immunity regarding the Plaintiffs' First Amendment claims as the officers had at least arguable probable cause to arrest them and the Plaintiffs did not show that any of the officers had a retaliatory motive that was a "but-for" cause of their arrests.  Finally, the district court held that the Plaintiffs' Monell claims failed.

The Plaintiffs appeal the district court's grant of summary judgment to the defendant officers.  They challenge the district court's finding that the officers were

---

[4]Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

entitled to qualified immunity regarding their First and Fourth Amendment claims. The Plaintiffs do not challenge the district court's grant of summary judgment regarding their claims against the City of St. Louis.

II.

"We review an appeal from a grant of summary judgment based on qualified immunity de novo." Brown v. City of St. Louis, 40 F.4th 895, 899 (8th Cir. 2022). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Steed v. Mo. State Highway Patrol, 2 F.4th 767, 770 (8th Cir. 2021) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)) (alteration in original). Indeed, "we may rely on video evidence found in the record where that video evidence 'blatantly contradict[s]' the nonmoving party's characterization of the facts." Brown, 40 F.4th at 899 (alteration in original) (citation omitted).

To determine whether the officers are entitled to qualified immunity, we conduct a two-part inquiry: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time." Webster v. Westlake, 41 F.4th 1004, 1009-10 (8th Cir. 2022); see also White v. Jackson, 865 F.3d 1064, 1074 (8th Cir. 2017). For a right to be clearly established, "at the time of the officer's conduct, the law [must have been] "'sufficiently clear' that every "reasonable official would understand that what he is doing'" is unlawful." Brown, 40 F.4th at 899 (citation omitted). "This requires either case law that 'place[s] the lawfulness of the particular arrest "beyond debate,"' or, in 'the rare "obvious case,"' unlawfulness that is 'sufficiently clear even though existing precedent does not address similar

-5-

circumstances.'"  Id. (alteration in original) (citation omitted).  Courts have discretion to resolve the case "under either step of this analysis." Carter v. Ludwick, 139 F.4th 982, 990 (8th Cir. 2025) (citation omitted); see also Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

## A.

First, we address the Plaintiffs' § 1983 claim that the officers seized them in violation of the Fourth Amendment.  They assert that the defendant officers did not have actual or arguable probable cause to arrest them, and therefore their arrests were unlawful.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011) (citation omitted).  "[W]e have assigned consideration of *actual* probable cause to our constitutional violation prong analysis while reserving any consideration of *arguable* probable cause for our clearly established prong analysis." Brown, 40 F.4th at 901.

The district court chose to "begin and end [its] analysis on the clearly established prong," finding that the defendant officers did not violate clearly established law when they arrested the Plaintiffs.  It declined to consider whether the officers had probable cause.  We will similarly "begin and end our analysis on the clearly established prong, as is our prerogative." Id. at 902.

An officer does not violate an "individual's 'clearly established' rights for qualified immunity purposes if he nevertheless had *arguable* probable cause to make the arrest." Brown, 40 F.4th at 901 (citation omitted).  Arguable probable cause exists when officers "arrest a suspect under the mistaken belief that they have

-6-

probable cause to do so, provided that the mistake is objectively reasonable." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008); see also Bell v. Neukirch, 979 F.3d 594, 608 (8th Cir. 2020) ("In other words, we must determine whether it was 'objectively legally reasonable' for an officer to conclude that the arrest was supported by probable cause." (citation omitted)). In conducting this inquiry, we must examine cases that pre-date October 3, 2017. See Brosseau v. Haugen, 543 U.S. 194, 200 n.4 (2004) ("[C]ases . . . that postdate the conduct in question . . . could not have given fair notice to [the officer] and are of no use in the clearly established inquiry.").

Bernini v. City of St. Paul is instructive and dispositive here.[5] See 665 F.3d 997 (8th Cir. 2012). There, the Court considered challenges to a mass arrest that occurred during protests at the 2008 Republican National Convention in St. Paul, Minnesota. Id. at 1001. After officers closed the downtown area, approximately 100 people gathered at an intersection and faced off with officers. Id. The officers directed the group westward, and it grew to approximately 400 people. Id. at 1002. The officers encircled the group, announced that everyone was under arrest, released about 200 people, and arrested about 160 people. Id.

The Court held that the arrest of 160 people, which included nine plaintiffs who were not present at the intersection (and therefore did not violate the law), was "within the range of objectively reasonable police conduct." Id. at 1005. It acknowledged the "practical dilemma faced by officers responsible for reacting to large group activity and recognized that a 'requirement that officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot.'" Id. at 1003 (citing Carr v. District of Columbia, 587 F.3d 401, 408 (D.C. Cir. 2009)). As such, the Court found "the Fourth Amendment 'is satisfied if the officers have grounds to believe all

_____

    [5]This is the only time the Eighth Circuit addressed qualified immunity in the context of a mass arrest before October 3, 2017. The parties agree that this case is controlling.

arrested persons were a part of a *unit* observed violating the law.'" Id. (citing Carr, 587 F.3d at 407).

In this case, it was objectively reasonable for the officers to conclude that the marching protesters acted as a unit. The protesters collectively entered Interstate 64 at Compton Avenue, headed eastbound, gathered at the base of the Jefferson Avenue off-ramp, exited the interstate highway, and then headed northbound on Jefferson Avenue. Indeed, the parties agree that the marching protesters were lawfully arrested for trespassing.

Additionally, it was objectively reasonable for the officers to believe that the Plaintiffs were part of the group of trespassing protesters. See Bernini, 665 F.3d at 1005; see also Heien v. North Carolina, 574 U.S. 54, 61 (2014) (explaining that the Fourth Amendment tolerates officers' reasonable mistakes of fact). The protesters surrounded the Plaintiffs at the base of the Jefferson Avenue off-ramp. Then, the entire group, including the Plaintiffs, proceeded to Jefferson Avenue and headed northbound. The Plaintiffs made no attempt to distance themselves from the group. Indeed, Hoffmann was in the midst of and surrounded by protesters while walking along Jefferson Avenue. Although Kampas was not seen on video after the group turned onto Jefferson Avenue, he was seen surrounded by protesters both while standing at the base of the Jefferson Avenue off-ramp and as he walked up the grassy area of the Jefferson Avenue off-ramp. Therefore, it was objectively reasonable for the officers to believe that the Plaintiffs were part of the unit that had engaged in unlawful activity. See White, 865 F.3d at 1075-76 (noting that because the plaintiff was "cognizant of the unlawful acts being committed . . . chose not to disassociate himself . . . heard the dispersal orders, and chose not to disperse," the officers had at least arguable probable cause to arrest him (citation omitted)). Given the large number of people, requiring officers to make a probable cause determination as to each individual would have been "practically impossible." Bernini, 665 F.3d at 1003.

Moreover, the officers encircled the group and effectuated the mass arrest immediately after the group exited the interstate highway. The Plaintiffs were not arrested hours after the incident, and the officers did not see any peripheral individuals join the group, which further supports the reasonableness of the officers' conduct. Although the Plaintiffs contend that <u>Dunn v. Does 1-22</u>[6] and <u>Baude v. Leyshock</u>[7] support reversing the district court, those cases post-date October 3, 2017, and in any event, are factually distinguishable and do not support their arguments. <u>See</u> <u>Dunn</u>, 116 F.4th at 747-48 (finding that the officers did not have arguable probable cause to arrest the plaintiffs for failure to disperse when they were found "blocks from where police earlier ordered protesters to disperse" hours before and "many people 'freely enter[ed] and exit[ed] the area'" during the intervening period (citation omitted)); <u>see</u> <u>Baude</u>, 23 F.4th at 1073 (holding that officers did not have arguable probable cause to conduct a mass arrest when "people were freely entering and exiting the area" and the officers merely believed that "some members of the crowd violated laws earlier in the day").

The Plaintiffs advance several arguments that they claim undermine the officers' arguable probable cause, but none is persuasive. First, the Plaintiffs contend that a mere violation of the law is insufficient for officers to deem a group a unit for the purpose of effectuating a mass arrest; they assert that the group must be "primed for confrontation." This is false. In <u>Bernini</u>, members of the group "donned gas masks and other facial coverings, as though they were preparing for a confrontation with police," which the Court found supported the officers' arguable probable cause to arrest the unit for third-degree riot and unlawful assembly. <u>See</u> 665 F.3d at 1004. Here, the officers arrested the unit for trespassing. Violence or threats of violence are irrelevant in determining whether an individual committed trespass. <u>See</u> Mo. Rev. Stat. § 569.140. While in <u>Bernini</u> the unit's preparation for a confrontation with law enforcement was relevant to rioting and unlawful assembly, the offenses for which the group was arrested, such actions are irrelevant to trespass

---

[6]116 F.4th 737 (8th Cir. 2024).

[7]23 F.4th 1065 (8th Cir. 2022).

and therefore the officers need not have found evidence of violence or threatened violence before determining that the group functioned as a unit.

Second, the Plaintiffs argue that their claims of innocence dissipated the officers' arguable probable cause. Although "we may not disregard exculpatory evidence when considering the totality of the circumstances to determine if arguable probable cause existed[,]" Nieters v. Holtan, 83 F.4th 1099, 1107 (8th Cir. 2023), there was no objective evidence brought to the officers' attention here that undermined their arguable probable cause. Indeed, the only evidence to the contrary was the Plaintiffs' protestations of their innocence. The Plaintiffs have failed to identify any cases holding that protesting one's innocence is enough to negate probable cause. Cf. District of Columbia v. Wesby, 583 U.S. 48, 62 (2018) (finding that the officers had probable cause to arrest the respondents where the circumstances suggested criminal activity despite their "protestations of innocence"). On the contrary, officers are not required to make individualized probable cause determinations before effectuating a mass arrest, which makes it even more unlikely that an individual's assertion of innocence would undermine arguable probable cause. See Baude, 23 F.4th at 1072 ("Where there is a unit, 'the Fourth Amendment d[oes] not require a probable cause determination with respect to each individual in a large and potentially riotous group before making arrests.'" (citation omitted)).

Finally, the Plaintiffs contend that officers must conduct a sorting process before conducting a mass arrest. In Bernini, the court found that the officers had arguable probable cause, in part, because the officers attempted to distinguish uninvolved individuals before effectuating the mass arrest. See 665 F.3d at 1005. However, in Bernini, the officers knew that the crowd contained nearly 300 uninvolved bystanders. Id. at 1002. By contrast, here, the officers encircled a similarly sized crowd to the one that had shut down the interstate highway minutes before. Aside from their protestations of innocence, the Plaintiffs produced no evidence showing that the officers should have known that the group contained some

individuals who had not been on the interstate highway. Therefore, the officers were not required to conduct a sorting process.

As such, we find that the defendant officers had arguable probable cause to arrest the Plaintiffs as part of the trespassing group, meaning that it was not clearly established that doing so violated their right to be free from unlawful seizure. Thus, we affirm the district court's grant of qualified immunity to the officers regarding the Plaintiffs' Fourth Amendment claim.

B.

Second, we address the Plaintiffs' § 1983 claim against the defendant officers for retaliatory arrest in violation of the First Amendment. To maintain a First Amendment retaliatory arrest claim, the Plaintiffs must show: (1) they "engaged in protected activity," (2) the officers "took adverse action . . . that would chill a person of ordinary firmness from continuing in the [protected] activity," (3) "the adverse action was motivated by the plaintiff's protected activity," and (4) "the officer(s) lacked probable cause or arguable probable cause." Just v. City of St. Louis, 7 F.4th 761, 768 (8th Cir. 2021) (alteration in original) (citation omitted).

In analyzing the Plaintiffs' Fourth Amendment claim, we have concluded that the officers had arguable probable cause to arrest the Plaintiffs as apparently part of the trespasser group. This finding of arguable probable cause for the Plaintiffs' arrest means that the First Amendment right asserted by the Plaintiffs, to be free from retaliatory arrest,[8] is also not clearly established. The Plaintiffs also assert that

_____

[8]Although the Plaintiffs' complaint alleges a First Amendment claim for violation of their right to freedom of speech and a First Amendment claim for retaliation, the Plaintiffs only discuss the latter allegation. As such, the Plaintiffs have abandoned their First Amendment freedom of speech claim. See Mark v. Ault, 498 F.3d 775, 786 (8th Cir. 2007) ("'[F]ailure to raise or discuss an issue in his brief [would] be deemed an abandonment of that issue.'" (alteration in original) (citation omitted)).

-11-

Officer Hawkins punished Hoffmann's speech by delaying his processing, thereby prolonging his detention. However, they did not raise this argument in the district court or in their opening brief on appeal. Therefore, it is not properly before us. <u>See United States v. Wright</u>, 844 F.3d 759, 763 (8th Cir. 2016). Therefore, we affirm the district court's grant of qualified immunity to the officers regarding the Plaintiffs' First Amendment claims.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____